UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| *In Re Kobalt Music Publishing America, Inc. Coordinated Copyright Cases*<br><br>*This filing relates to:*<br><br>All Coordinated Cases | 24-cv-05454 (ER) (BCM)<br>24-cv-05455 (JAV) (BCM)<br>24-cv-05456 (AKH) (BCM)<br>24-cv-05457 (JGK) (BCM)<br>24-cv-05458 (VM) (BCM)<br>24-cv-05459 (JAV) (BCM)<br>24-cv-05460 (LJL) (BCM)<br>24-cv-05462 (GHW) (BCM)<br>24-cv-05463 (JLR) (BCM)<br>24-cv-05465 (GHW) (BCM)<br>24-cv-05466 (JHR) (BCM) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i) and leave granted by this Court during the February 10, 2025 Initial Case Management Conference in this matter, Defendants in the above-referenced cases (the "Coordinated Defendants") hereby move to compel the production of documents sought in subpoenas served on non-party Qi Venture Partners LLC ("QVP") in each of the above case numbers (the "Coordinated Cases").[1] For the reasons discussed below, Coordinated Defendants request that the Court enter an order compelling QVP to fully comply with each of the subpoenas.

---

[1] The Coordinated Defendants are: Cavaliers Operating Company LLC; The Denver Nuggets Limited Partnership; Pacers Basketball LLC; Miami Heat Limited Partnership; Minnesota Timberwolves Basketball Limited Partnership; New Orleans Pelicans NBA, LLC; New York Knicks, LLC; Philadelphia 76ers LP; Suns Legacy Partners LLC; Sacramento Kings Limited Partnership; and San Antonio Spurs LLC.

1

## BACKGROUND

**I.    QVP and the Coordinated Defendants' Subpoenas**

Non-party QVP is a Delaware limited liability company that maintains its principal place of business at 56 West 22nd St. in New York, New York. (*See* "Home" page of QVP's website, available at Home - Qi Venture Partners.) According to its website, one of QVP's "Portfolio Partners" is TuneSat LLC (*id.*), another non-party that works with Plaintiffs' counsel in this case to identify potentially infringing uses of copyrights. (*See, e.g.*, *Artist Publishing Group, LLC, et al. v. San Antonio Spurs, L.L.C.*, Dkt. No. 65 at 2-3.) "TuneSat is an independent audio monitoring service" that uses technology to "monitor[] hundreds of TV channels, helping rightsholders collect millions of dollars that otherwise would have been lost. . . . TuneSat subscribers use this valuable data to recover lost royalties, protect their copyrights, and gain unparalleled business intelligence." (*See* TuneSat LLC "FAQ's" page, available at TuneSat.) Plaintiffs in the Coordinated Cases—a group of these alleged "rightsholders"—are TuneSat's clients. The rightsholders use the information TuneSat provides them to file lawsuits like the Coordinated Cases, ███████ ███████████████████████████████████████████████████████████. (*See* C. Woods Tr. at 161:7-20, attached hereto as Exhibit A.)

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████.
(*Id.* at 20:20-25; 21:1-3.) According to TuneSat's Chief Operating Officer, ███████
███████████████████████████████████████ (*Id.* at 34:11-18.) More specifically, ███████████████████████████
███████████████████████████████████████ (*Id.* at 30:8-19.)

QVP's role in the process is to ███████████████████████████

███ (*Id.* at 30:8-11.) ███

███ (*Id.* at 38:22-39:3.) ███

███ (*Id.* 32:23-33:1.)

Given the purpose of ███ and QVP's role in it, QVP has in its possession documents and communications relevant to Plaintiffs' claims and Coordinated Defendants' defenses in the Coordinated Cases. Most obviously, as TuneSat's Chief Operating Officer Chris Woods testified, QVP ███ (*Id.* at 38:22-39:3.) ███ (*Id.* 31:4-24.)

The subpoenas at issue in this Motion, dated January 30, 2025, required QVP to produce these and similar communications sent to or received by QVP.[2] The documents called for by the subpoenas, in turn, are directly relevant to a "claim or defense" in each of the Coordinated Cases, *see* Fed. R. Civ. P. 26(b)(1)—namely, Coordinated Defendants' statute of limitations defenses—because they are relevant to the date on which Plaintiffs knew or should have known of the copyright infringement alleged in Plaintiffs' Complaints. (*See infra* at 6-7.)

The January 30, 2025 subpoenas were not extensive; they called for only 4 categories of documents, some of which may well overlap:

---

[2] On February 6, 2025, counsel for Coordinated Defendants emailed 12 subpoenas to counsel for QVP, one for each of the 12 Coordinated Defendants in the Coordinated Cases. (*See* Feb. 6, 2025 email from D. Slovick to R. Cohen, attached hereto as Exhibit B.) By return email the same day, counsel for QVP acknowledged receipt of the subpoenas and agreed to accept service on behalf of QVP. (*Id.*)

3

**DOCUMENT REQUESTS**

1. All documents, emails, and **Communications** relating or referring to **Minnesota Timberwolves** or any **Media Site** or other data repository maintained by or referencing the **Minnesota Timberwolves**.

2. All documents, emails, and **Communications** relating or referring to actual or proposed searches of any **Media Site** or other data repository relating to the **Minnesota Timberwolves**.

3. All reports, spreadsheets, or other documents that relate or refer to the **Minnesota Timberwolves** or any **Media Site** or other data repository maintained by or referencing the **Minnesota Timberwolves**.

4. All "company lists," documents, emails, and **Communications** between **You** and **TuneSat** related to the research or searches to be performed by **TuneSat** related to potential copyright infringement.

(*See* Jan. 30, 2025 Minnesota Timberwolves Subpoena, attached hereto as Exhibit C).[3] As their limited scope demonstrates, the subpoenas were not designed to burden QVP. Instead, as TuneSat's Chief Operating Officer testified at his deposition, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**II.    QVP's Response to the Subpoenas**

On February 14, 2025, counsel for QVP (the same lawyer who represents non-party TuneSat) notified counsel for Coordinated Defendants that QVP would not produce any documents called for by the January 30, 2025 subpoenas. Two weeks earlier, on January 31, 2025, the same lawyer told Coordinated Defendants' counsel that he would not produce any documents on behalf of TuneSat, either. Pursuant to paragraph 2.b. of this Court's Individual Practices, on March 24, 2025, the parties met and conferred by telephone about QVP's response to the

---

[3] The four requests in the attached subpoena in the Minnesota Timberwolves case are identical to the requests in the other 11 subpoenas, except that the name of the Defendant is different in each subpoena. To avoid burdening the Court with redundant papers Coordinated Defendants did not file the remaining 11 subpoenas with this Motion, but will do so at the Court's request.

subpoenas. During the call, counsel for QVP told counsel for Coordinated Defendants that QVP's refusal was due to what he characterized as the overbreadth and burdensomeness of the subpoenas. In particular, counsel suggested that the requests were overbroad because they did not exclude internal communications between employees of QVP. That is, counsel's proposed comprise sought to limit the subpoenas to communications between QVP and TuneSat only. Counsel for Coordinated Defendants responded that communications that are wholly internal to a company (QVP or any other company) are often highly relevant to a case, and gave the hypothetical of two QVP employees emailing internally to one another about information QVP had provided to TuneSat concerning potentially infringing uses of the songs at issue in Plaintiffs' Complaint. For reasons that were not clear to Coordinated Defendants' counsel, counsel for QVP rejected this hypothetical out of hand and, as he had done in response to Coordinated Defendants' document subpoenas to TuneSat, ended the parties' meet and confer call by refusing to produce any documents called for by the subpoenas.

## ARGUMENT

Federal Rule of Civil Procedure 45(d)(2)(B)(i) provides, in relevant part:

If an objection is made [by a person commanded to produce documents], the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

Fed. R. Civ. P. 45(d)(2)(B)(i). Parties moving to compel the production of documents under Rule 45(d)(2)(B)(i) "must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Oasis Medical, Inc. v. I-Med Pharma USA Inc.*, 23-MC-206 (ALC) (BCM), 2023 WL 6301728, at *8 (S.D.N.Y Sept. 1, 2023) (Moses, Mag. J.). Beyond that requirement, however, the scope of discovery under Federal Rule of Civil Procedure

5

45 "does not change based on party status." *Kenyon v. Simon & Schuster, Inc.*, No. 16 Misc. 327 (P1), 2016 WL 5930265, at *5 (S.D.N.Y. Oct. 11, 2016). " 'The non-party witness is subject to the same scope of discovery under [Federal Rule of Civil Procedure 45] as that person would be as a party to whom a request is addressed pursuant to Rule 34.' " *Id.* (quoting advisory committee's note to 1991 amendment to Rule 45); *see also Beare v. Millington*, No. 07-cv-3391 (ERK) (MDG), 2010 WL 234771, at *1 (E.D.N.Y. Jan. 13, 2010) (granting motion to compel non-party to comply with subpoena and ruling that a non-party witness is subject to the same scope of discovery as a party). Further, "Rule 45 (like Rule 34) reaches otherwise-discoverable documents in the recipient's 'possession, custody, or control' . . . regardless of who or what has legal title or equitable claims to those documents." *Oasis Medical, Inc.*, 2023 WL 6301728, at *8.

As an initial matter, QVP does not dispute that the documents called for by Coordinated Defendants' January 30, 2025 subpoenas are "relevant" to a "claim or defense" in the Coordinated Cases. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .") To the contrary, QVP's counsel already conceded in a filing in the related *Orlando Magic* case that information related to the identification of potentially infringing uses of information—in whatever form that information takes—is directly relevant to "Defendant's Second Affirmative Defense in which it asserts that the claims in the complaint are barred by the statute of limitations in 17 U.S.C. § 507." (*See Artist Publishing Group, LLC, et al. v. Orlando Magic, Ltd.*, No. 24-cv-5461, Dkt. No. 30 at 2; *see also id.* at Dkt. No. 21 ¶¶ 46-49.) Specifically, the documents sought in the January 30 subpoenas are directly relevant to Coordinated Defendants' statute of limitations

6

defense because they establish when Plaintiffs and their agents QVP and TuneSat knew, or should have known, enough facts to lead them to seek legal advice for alleged copyright infringement.[4]

Moreover, QVP's attempt to limit its document production to external communications between QVP and TuneSat, or in any other manner unrelated to the relevance of the documents sought, misunderstands the limitations imposed by Federal Rule of Civil Procedure 26. As counsel for Coordinated Defendants discussed with QVP's counsel during their March 24, 2025 meet and confer, parties responding to a subpoena do not get to decide for themselves what documents may be probative of a party's claim or defense and exclude from their subpoena response documents that they subjectively believe do not provide evidence of the requesting party's position. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .") Whether a document is or is not probative of a party's claim or defense is a determination for the Court or a jury to make, not the parties. In other words, QVP is confusing the *relevance* of the documents Coordinated Defendants seek with the *weight of the evidence* they supply. *See, e.g.*, *VR Optics, LLC v. Peloton Interactive, Inc.*, 16-CV-6392 (JPO), 2019 WL 2121690, at *7 (S.D.N.Y. May 15, 2019) ("[The defendant's] arguments with respect to the supposed triviality of the information sought by [the plaintiff] go to the weight of this evidence, not to its relevance. Accordingly, the Court concludes that production of these documents is warranted under the standards set forth in Rule 26(b)(1)."); *see also, e.g.*, *DoorDash, Inc. v. City of New York*, No. 21 Civ. 7564 (GHW) (GS), 2024 WL 4589891, at *11 (S.D.N.Y.

---

[4] Civil actions for copyright infringement must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). In the Second Circuit, copyright infringement claims accrue upon "actual *or constructive* discovery of the relevant infringement . . . ." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014) (emphasis added). The "legal rights that stem from certain facts or circumstances need not be known, only the facts or circumstances themselves." *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992). A claim accrues when a plaintiff "knows, or should know, enough of the critical facts" such that it would lead him or her to seek legal advice. *Parisienne v. Scripps Media, Inc.*, 19 Civ. 8612 (ER), 192021 WL 3668084, at *4. (S.D.N.Y. Aug. 17, 2021) (citation omitted).

Oct. 25, 2024) (denying non-parties' motion to quash subpoenas seeking certain communications because "[u]ltimately, the Non-Parties' objections go to the weight and admissibility of their communications . . . . Questions as to the . . . significance of the Non-Parties' communications . . . will be decided by Judge Woods at a later date").

Here, counsel for QVP (and TuneSat) has already conceded that communications reflecting information related to the identification of potentially infringing uses are relevant to Coordinated Defendants' statute of limitations defense. In fact, according to TuneSat's Chief Operating Officer, ███████████████████████████████████████████████████████████████████████████████████ (*Supra* at 2-3.) Who the parties to those communications were, for example, or whether the communications expressly reflect the names of the Coordinated Defendants in this case (another limiting factor QVP's counsel suggested during the parties' meet and confer) is beside the point.

As for QVP's general objections based on breadth and burden, QVP's blanket refusal to produce *any* documents called for by the subpoenas suggests that it believes that *any* amount of work required of a non-party to produce documents is too much, and constitutes a valid basis for refusing to comply with a subpoena. But that is wrong. Non-party corporations like QVP are "subject to the same scope of discovery . . . as a party" to the litigation. *Kenyon*, 2016 WL 5930265, at *4-5 (rejecting non-party's argument that a document subpoena "impose[d] an undue burden because of the amount of effort [the non-party] would need to expend in order to locate responsive documents. . . . What [the non-party] describes as an undue burden is merely the typical process for a corporation responding to a document request"). QVP cannot refuse to comply with the January 30, 2025 subpoenas just because it will have to make an extra effort to do so.

Finally, even though QVP is a non-party to this case, TuneSat's Chief Operating Officer testified that ▮ (Exhibit A at 30:8-19; 34:11-15), ▮ In short, like its joint-venture partner TuneSat, QVP voluntarily inserted itself into the Coordinated Cases through ▮ for its own financial gain, and should therefore be required to comply with the rules governing discovery just like any other litigant.

## CONCLUSION

For the reasons set forth above, Coordinated Defendants respectfully request that the Court (1) grant their Motion to Compel the Production of Documents from Qi Venture Partners LLC in its entirety, and (2) compel Qi Venture Partners LLC to produce all of the documents called for by the January 30, 2025 subpoenas served in each of the Coordinated Cases.

## WORD-COUNT CERTIFICATION

Pursuant to Local Civil Rule 7.1(c), undersigned counsel hereby certifies that the foregoing Memorandum of Law in Support of Defendants' Motion to Compel the Production of Documents complies with the word-count limitations in the Rule and contains 2,401 words.

Dated: New York, New York
April 16, 2025

Respectfully submitted,

*/s/ David Slovick/*

David S. Slovick
Barnes & Thornburg LLP
390 Madison Ave., 12th Floor
New York, NY 10017

9

dslovick@btlaw.com
(646) 746-2019

*Attorney for Coordinated Defendants*